**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

THE BOARD OF COMMISSIONERS                    CIVIL ACTION
OF THE PORT OF NEW ORLEANS

VERSUS                                        NO. 15-6527

MARK STERN, ET AL.                            SECTION: "B" (3)

<u>ORDER AND REASONS</u>

**I.    NATURE OF MOTION AND RELIEF SOUGHT**

Before the court are Defendants Mark Stern and Grubb Young &
Co.'s ("GYC," collectively "Defendants") "Motion to Dismiss for
Lack of Personal Jurisdiction" (Rec. Doc. 27) and the Board of
Commissioners of the Port of New Orleans' ("Port" or "Plaintiff")
opposition thereto (Rec. Doc. 42). Also before the court are
Defendant Stern's "Motion to Dismiss for Failure to State a Claim"
(Rec. Doc. 28) and Plaintiff's opposition thereto (Rec. Doc. 43).

For the foregoing reasons, **IT IS ORDERED** that Defendants'
"Motion to Dismiss for Lack of Personal Jurisdiction" (Rec. Doc.
27) is **DENIED. IT IS FURTHER ORDERED** that Defendant Stern's "Motion
to Dismiss for Failure to State a Claim" (Rec. Doc. 28) is **DENIED.**

**II.   FACTS AND PROCEDURAL HISTORY**

Mark Stern is the founder and CEO of Grubb Young & Co.
("GYC"), a limited liability company with its principal place of
business in Las Vegas, Nevada. (Rec. Doc. 1.) Stern is domiciled
in Toronto, Ontario, Canada. (Rec. Doc. 27-1). In 2006, the Port

opened the Erato Street Cruise Terminal and Parking Garage Complex to accommodate cruise lines and their passengers. (Rec. Doc. 1). Since then, numerous third-party services have marketed their private parking facilities, competing with the Port's parking. (Rec. Doc. 1). On February 7, 2013, GYC registered the website domain "PortOfNewOrleansParking.com." (Rec. Doc. 1).

The Port has used the tradename, trademark, and service mark "Port of New Orleans" since at least 1991, but have been identified with the name as early as 1896. (Rec. Doc. 1). The "Port of New Orleans" name, stylized or with design, was registered with the United States Patent and Trademark Office on June 7, 2009. (Rec. Doc. 1-14). On December 7, 2015, Plaintiff filed its complaint against GYC and Stern alleging unauthorized use of "Port of New Orleans" in the website's domain name and contents. (Rec. Doc. 1). Defendants moved to dismiss for lack of personal jurisdiction and failure to state a claim, now before the court. (Rec. Doc. 1).

The PortOfNewOrleansParking.com webpage is entitled "Southern Style and Great Rates at Port of New Orleans Parking." (Rec. Doc. 1-26). The website lists several parking services and garages near the Port with links to their directions and websites. (Rec. Doc. 42-3). It features a disclaimer stating that it has no affiliation with the Port. (Rec. Doc. 27-1). The website links to a Twitter account, @portorleansparking, bearing the name "Port of New

2

Orleans[1]" with the account biography as "The Most Affordable Port Parking Lot" and a picture of a map approximately marking the location of the Port of New Orleans. (Rec. Doc. 1-28). After Plaintiff filed the complaint, Defendants registered another domain linking to the same webpage, NewOrleansPortParking.com. (Rec. Doc. 42-1). The webpage offers a chat feature allowing visitors to inquire about parking with a customer service representative in real time. (Rec. Doc. 42, Rec. Doc. 42-3). Due to an error in the website's code, the chat feature is in the background of the website, but is nonetheless functional. (Rec. Doc. 42). In total, the chat feature was accessed by four visitors, at least one of which was Plaintiff's counsel. (Rec. Doc. 49-2). Other interactive features on the website include an email function and comments section, none of which received any traffic. (Rec. Doc. 49).

The webpage states, "We're more than happy to accept all major credit cards," and "With our super low $6 a day rate, you won't have to worry about this issue at New Orleans Port Parking Parking [sic]." (Rec. Doc. 42-6). The website does not perform the bookings, that is, collect credit card information and reserve parking spots, but it does contain a "non-functioning, booking 'widget.'" (Rec. Doc. 27-1).

---

[1] The Twitter account was later renamed to "Port Orleans Parking." (Rec. Doc. 42-1)

III. DISCUSSION

    A.    PERSONAL JURISDICTION

A court may exercise general personal jurisdiction over a defendant when its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 134 S. Ct. at 761. General jurisdiction permits the cause of action to be unrelated to the defendant's extensive contacts within the forum. *Id.* at 754. The Supreme Court has articulated a "limited set of affiliations with a forum [that] will render a defendant amenable to all-purpose jurisdiction there." *Id.* at 760. For an individual, it is his or her domicile; for a corporation, the paradigmatic exemplars are where it is incorporated or has its principal place of business. *Goodyear,* 131 S. Ct. at 2853-2854. Neither Stern nor GYC can be regarded as "at home" in Louisiana because Louisiana is not Stern's domicile, GYC'S place of incorporation, nor its principal place of business. Thus, GYC and Stern are not subject to the court's general personal jurisdiction.

Alternatively, courts may exercise specific jurisdiction over a defendant when the cause of action arises out of or is related to the defendant's contacts within the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 468 U.S. 408, 414 (1984). The Fifth Circuit has formulated a three-step inquiry to evaluate whether a defendant has sufficient minimum contacts so that a court

may exercise personal jurisdiction: (1) whether the defendant purposely directed its activities to the forum state or purposely availed itself of the privileges of conducting business there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Nuovo Pignone v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)(citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

The Fifth Circuit has established a sliding scale ("*Zippo* scale") to assess whether a defendant has purposefully availed itself to the forum based on activity over the internet. *Mink v. AAAA Development, LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (citing *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.* 952 F.Supp. 1119 (W.D.Pa.1997). The scale classifies websites into three categories. *Id.* Personal jurisdiction is proper when the website is able to enter into contracts with residents of the forum state and involves the knowing and repeated transmission of computer files over the internet. *Id.* (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996)). Personal jurisdiction is improper when the website is "passive," that is, does nothing more than advertise on the internet. *Id.* In between, personal jurisdiction is adjudged based on the level of interactivity and commercial nature of the exchange of information. *Id.*

In *Mink v. AAAA Development LLC*, the website at issue listed a toll-free number, a printable mail-in order form, mailing address, and an e-mail address. *Id.* The Fifth Circuit held the website fell into the "passive" category of the *Zippo* scale because the website could not interact with users. *Id.* The Fifth Circuit distinguished *Mink* from an interactive website in *Revell v. Lidov.* 317 F.3d 467, 472 (5th Cir. 2002). In *Revell*, the website operated as an on-line bulletin board for any user to send and receive information. *Id.* The exchange of information served as the basis for evaluating personal jurisdiction in the intermediary of the *Zippo* scale. *Id.*

Here, defendants' website advertises information for third-party parking services. (Rec. Doc. 42-3). It also features a real-time chat feature resulting in information being exchanged. (Rec. Doc. 42-3). Unlike in *Mink*, the email and commenting function here are built into the website. 190 F.3d 333 at 336. Though the interactive features are limited to "expressing an interest in a commercial product," they nonetheless occur on the website in a real-time exchange of information. *Revell*, 317 F.3d 467 at 472. *See also Ford v. Mentor Worldwide, LLC*, 2 F.Supp. 3d 898, 905 (E.D.La. 2014). The website here has sufficient interactivity placing it in the middle ground of the *Zippo* scale. Since the website is interactive, it must now be shown the injury arises from the website. *Id.*

Plaintiff argues that jurisdiction is proper because defendants knew their conduct would result in harm felt within the forum. (Rec. Doc. 42-1). This has been called the "effects" test or *Calder* test with respect to the Supreme Court's decision in *Calder v. Jones*. 465 U.S. 783, 788 (1984). The "effects" test is one aspect of the defendant's contacts with the forum, but not a substitute for minimum contacts. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001). The "effects" test requires that the defendant must have (1) committed an intentional act; (2) expressly aimed at the forum state; that (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state. *Calder*, 465 U.S. at 788.

The Fifth Circuit has not settled whether trademark disputes fall under recognized intentional torts for the *Calder* test. *Healfix Infusion Therapy, Inc. v. Helix Health, LLC*, Civil Action No. H-08-0337, 2008 WL 1883546, at *6 (S.D. Tex. Apr. 25, 2008). However, other courts have consistently applied the *Calder* test to trademark disputes. *Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Circ. 2008); *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998); *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership*, 34 F.3d 410, 412 (7th Cir, 1994). Further, the Fifth Circuit has held, "When the actual content of communications with a forum gives rise

to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). For specific jurisdiction, courts should analyze only the contact out of which the cause of action arises, here, that is the maintenance of a trademark infringing website. *Revell*, 317 F.3d at 472.

Here, the injury did not arise from website's inability to collect payments or perform bookings, but arose from the actual content of the website bearing allegedly infringing marks. *See Ford*, 2 F.Supp. 3d at 905-907. The website's "express aiming" at the forum is marked by its domain name, defendants' use of an SEO, the website's real-time chat, ability to post comments, and direct e-mail, each premised on facilitating services physically performed in Louisiana. (Rec. Doc. 42-1). The website's contacts contemplate parking in only Louisiana for which physical presence is necessary. (Rec. Doc. 42-1). Thus, defendants specifically and solely targeted the forum through multiple avenues on the website which has given rise to the injury satisfying the first two prongs of the specific jurisdiction inquiry. *Nuovo Pignone*, 310 F.3d at 378.

Once these constitutionally minimum contacts are established, the defendants have a burden to make a "compelling case" that jurisdiction is not reasonable and fair. *Wien Air Alaska*, 195 F.3d at 215. Here, Defendants have made no showing why exercising

personal specific jurisdiction would be unfair or unreasonable. (Rec. Doc. 42-1). Thus, the Port has made a prima facie showing that exercising jurisdiction comports with due process.

**B. FAILURE TO STATE A CLAIM**

The Port has stated causes of action for infringement, dilution, and unfair competition under both state and federal law. (Rec. Doc. 43-1). Stern contends he cannot be personally liable for GYC's corporate actions and therefore should be dismissed from the case. (Rec. Doc. 28). Under federal law, a trademark may be infringed by a corporate officer when it is found that the individual partook in the infringing. *Mead Johnson & Co. v. Baby's Formula Service, Inc.*, 403 F.2d 19, 23 (5th Cir. 1968); *Audubon Real Estate Associates, L.L.C. v. Audubon Realty, L.L.C.*, Civil Action No. 15-115, 2016 WL 740467, at *3-5 (M.D.La. Feb. 24, 2016) (finding that the *Mead* rationale applicable to an LLC.) Further, there is no requirement that a plaintiff must first "pierce the corporate veil" to impose parallel personal and corporate liability. *Engineering Dynamics, Inc. v. Structural Software, Inc.* 26 F.3d 1335, 1349 (5th Cir. 1994). Nor is there any requirement for the officer to be acting outside of corporate capacity. *Mead*, 403 F.2d 19, 23 (5th Cir. 1968). Since the Port has contended that Stern was involved in the trademark infringement, Stern is not shielded from potential liability by GYC's limited liability status for the federal claims. (Rec. Doc. 43-1).

Louisiana state law recognizes exceptions to personal liability relating to LLCs including fraud, breach of professional duty, "or other wrongful act." La. R.S. 1320(D). "Other wrongful acts" are not limited to torts and the Louisiana Supreme Court has set forth four factors to analyze the scope of conduct the statute envisions: (1) whether a member's conduct could be fairly characterized as a traditionally recognized tort; (2) whether a member's conduct could be fairly characterized as a crime for which a natural person could be held culpable; (3) whether the conduct at issue was required by or in furtherance of a contract between claimant and the LLC; (4) and whether the conduct at issue was done outside the member's capacity as a member. *Ogea v. Merritt*, 130 So.3d 888, 900 (2013). In *Audubon Real Estate Associates, L.L.C. v. Audubon Realty, L.L.C.*, the court held Louisiana state law violations of trademark infringement, unfair trade practices, and unfair competition fit traditionally recognized torts triggering an exception to limited liability under 12:1320(D). 2016 WL 740467, at *3-5. Here, the Port has pled identical state law claims in its complaint. (Rec. Doc. 1.) Thus, state law recognizes an exception to GYC's limited liability and Stern may be personally liable. The website's registration shows the actual registrant as "Stern" on "behalf of grubyoung.com." (Rec. Doc. 1-26). Further, the Port points to Stern's role as the sole founder and owner of GYC. (Rec. Doc. 1). These factual allegations and the

existing state and federal law sufficiently show that Stern's involvement in the trademark infringement as "plausible," rendering dismissal of Stern inappropriate.

New Orleans, Louisiana, this 21st day of November, 2016.

_____
SENIOR UNITED STATES DISTRICT JUDGE